[Cite as *In re A.G.*, 2019-Ohio-1786.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: A.G., I.G. E.G. and N.G. | : | JUDGES: Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case Nos.   18-CA-51,18-CA-52, |
|  | : |    18-CA-53,18-CA-54 |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:   Civil appeal from the Fairfield County Court of Common Pleas, Juvenile Division, Case No. 2017AB99, 2017AB100, 2017AB101, & 2017AB181

JUDGMENT:   Affirmed

DATE OF JUDGMENT ENTRY:   May 8, 2019

APPEARANCES:

For-Appellant-Father
AMANDA R. MORRIS
5885 Wilson Road NW
Lancaster, OH 43130

For State of Ohio
R. KYLE WITT
Fairfield County Prosecutor
BY: GENILYN COSGROVE
ANDREW KAGEN
239 West Main Street
Lancaster, OH 43130

For-Appellant-Mother
DAVID A. TAWNEY
117 West Main Street, Ste. 208
Lancaster, OH 43130

GUARDIAN AD LITEM
ERIN MCENANEY
6956 East Broad Street
Columbus, OH 43213

*Gwin, P.J.*

**{¶1}** Appellant-mother appeals the November 28, 2018 Judgment Entry of the Fairfield County Court of Common Pleas, Juvenile Court Division, which terminated her parental rights with respect to her minor children, A.G. (b. Mar. 30, 2009), I.G. (b. Nov. 08, 2013), E.G. (b. May 13, 2016, and N.G. (b. Nov. 20, 2017) and granted permanent custody of the children to appellee, Fairfield County Child Protective Services (hereinafter "FCCPS").

*Facts and Procedural History*

**{¶2}** Appellant had been voluntarily working with FCCPS. However, on July 21, 2017, FCCPS filed a Complaint alleging that A.G., I.G., and E.G. were dependent children. On that date, a shelter hearing was held and children were placed in the temporary shelter custody of FCCPS. On October 2, 2017, the children were found to be dependent children, and were placed in the temporary custody of FCCPS.

**{¶3}** On November 21, 2017, FCCPS filed a Complaint alleging that N.G. was a dependent child[1]. On that date, a shelter hearing was held, and N.G. was placed in the temporary shelter custody of FCCPS.

**{¶4}** On December 17, 2017, an Order of Placement in Family Drug Court was filed with respect to both Father and Appellant.

**{¶5}** On February 2, 2018, N.G. was found to be a dependent minor, and was placed in the temporary custody of FCCPS.

**{¶6}** On April 17, 2018, a review hearing was held with respect to the children.

**{¶7}** On May 17, 2018, FCCPS filed a Motion for Permanent Custody with respect to all four children.

---

[1] N.G. was removed from Appellant's care at the time of her birth.

**{¶8}** On July 10, 2018, a review hearing was held with respect to all four children. This hearing was an annual review for A.G., I.G. and E.G. and the temporary custody of the children was extended for six months.

**{¶9}** On September 20, 2018, a pre-trial was held on the Motion for Permanent Custody.

**{¶10}** On October 4, 2018, an evidentiary hearing on the Motion for Permanent Custody was held.

*PERMANENT CUSTODY TRIAL*

**{¶11}** The initial concerns for Appellant at the time of the initial involvement of FCCPS included concerns over stable housing and income, as Mother was unemployed and did not have independent housing; concerns over Mother's ability to provide appropriate and adequate supervision while utilizing appropriate parenting techniques; concerns over Mother's history of substance abuse. Additionally, most or all of these concerns continued to exist at the time of N.G.'s birth, as N.G. was born with concerns over her withdrawal symptoms, and there were concerns over Mother's behavior at the hospital[2].

**{¶12}** FCCPS asked Mother to engage in treatment to address concerns with mental health and substance abuse issues.

**{¶13}** Mother acknowledged during testimony that she has some mental health issues, and that she has a history of substance abuse spanning several years. Mother admitted to using illegal substances while she was pregnant with N.G.

---

[2] Testimony indicated that N.G. was suffering from marijuana withdrawal symptoms. (T. at 157-158).

{¶14} There was significant testimony to suggest that Mother was actively engaged with her treatment during much of the life of the case. Mother worked regularly on issues relating to mental health and substance abuse with the Recovery Center. At one point around April 2018, after a relapse, it was recommended that Mother attend inpatient treatment, Mother did not follow this recommendation.

{¶15} Mother's counselor did acknowledge significant progress in her treatment, but also admitted that there were still areas of concern. For example, Ms. Milligan from the Recovery Center indicated that Mother continues to have co-dependency issues, and needs ongoing work to develop the necessary independent living skills to increase her likelihood of long-term success. Mother actively participated in mental health and substance abuse treatment during the life of the case. However, Mother did not follow all recommendations, and some concerns remain.

{¶16} FCCPS asked Mother to regularly screen for drugs and alcohol, and to demonstrate consistent sobriety.

{¶17} For the most part, testimony regarding this aspect of Mother's case plan was not disputed during the hearing. All parties stipulated to the admission of an Exhibit detailing Mother's records with respect to calling and screening with American Court Services. Much like Father, there was some testimony to suggest that Mother went through periods of inconsistency with this aspect of her case plan. Mother admitted that she most recently relapsed in April 2018. There was testimony to suggest that since April 2018, she has been compliant with this aspect of her case plan. She has called and screened as requested for FCCPS, and has provided screens that did not contain any unauthorized substances.

**{¶18}** Although Mother has demonstrated sobriety in recent months, given her history of substance abuse and relapses along with ongoing unmet goals to be addressed through treatment, some concerns remain with respect to her ability to demonstrate consistent, ongoing sobriety.

**{¶19}** FCCPS asked Mother to attend regular visitation sessions with the children and demonstrate appropriate parenting techniques and adequate supervision during those visits.

**{¶20}** Mother consistently attended visitation sessions during the life of the case. Due to ongoing concerns throughout the case, these visits remained supervised during the entire period since the children were removed. During these visits, Mother regularly demonstrated her love and affection for her children, and a desire to meet their needs. However, some concerns remain with respect to her ability to effectively supervise all of the children at once. Consistent concerns were noted with respect to Mother's ability to appropriately monitor and provide attention to all of the children at visits. Due to a therapeutic recommendation, visits were recently changed from being with all four children, to visits with two children at a time in order to give Mother and Father an opportunity to provide appropriate attention to all of the children. At times Father engaged in behavior that upset the children. Testimony indicated that Mother was unable to get Father to stop engaging in such behavior during visits, and oftentimes the visitation monitor would have to redirect Father after Mother was unable to do so. Visits often ended early at the request of Father. Although Mother could have encouraged Father to stay for the duration of the visit, or could have continued the visits on her own, testimony indicated that she would instead leave the visit early with Father. Mother and

Father often failed to provide snacks or meals for the children at visits, even after FCCPS had asked them to do so. The trial court acknowledged that Mother deserves credit for attending visitation sessions regularly, and much of her behavior during these visits was appropriate.

{¶21} At one or more points during the life of the case, Mother was offered the opportunity to complete parenting education. Mother chose not to engage in these services. Given that the initial concerns included issues with respect to parenting techniques and supervision, along with the concerns arising out of the visitation sessions with the children, Mother could have benefited greatly from parenting education.

{¶22} FCCPS asked Mother to maintain stable income and housing in order to address concerns over her ability, along with Father's, to provide a stable home and other necessities for the children. At some point on or around the Agency's initial involvement, Father, Mother, and the children were residing with Mother's mother. There were approximately nine people, including the children, staying in the three bedroom home. There was testimony to suggest that Mother, Father, and the children were evicted from that home sometime in July 2017. After that time, Father, Mother, and the children began to reside with Father's father. There was testimony to suggest that there were many people residing in that four bedroom home. Testimony indicated that the family spent two or three months in the home, and left the home at some point in 2017. Both parents indicated that there were times when they were homeless or staying from couch to couch with friends. At the time of the hearing, nearly fifteen

months after the oldest children were removed, Mother and Father were staying with a friend in a one-bedroom apartment that was not suitable for the children.

{¶23} At some time in April 2018, Mother was approved for housing at the Pearl House in Lancaster, and resided there for several months. This housing provided Mother with a promising opportunity because if she followed the contract as required, and continued to work services with FCCPS, she would have been able to have the children reside with her at the residence. For a variety of reasons, Father could not be placed on the lease at the Pearl House, and was not allowed to stay on the property. Mother acknowledged during testimony that she knew this was a violation. At some point around August of 2018, Mother was evicted from the Pearl House for allowing Father to stay there, in violation of the contract. Rather than voluntarily leave, Mother stayed through eviction thereby losing her eligibility for Metropolitan Housing. Father likewise is ineligible for assisted housing.

{¶24} With respect to income, Mother was employed at a local factory at the time of the hearing, and had maintained that employment for several months. Mother testified that she typically is paid every two weeks, and her checks were roughly $1,000.00. Mother indicated that her place of employment has a points system in which an employee is terminated automatically for having seven points. At the time of the hearing, Mother indicated that she had 6.5 points. Mother testified that this position was the only position that she has had in several years, including a significant period since the children were removed.

{¶25} Mother indicated that her and Father pay some of the bills at her current residence, but do not pay a set rent amount. Overall, testimony reflected

that Mother's bills were limited in her current location. Despite this, Mother acknowledged on several occasions that she has been unable to save any significant amount of money to put towards a deposit, or first month's rent on housing that would be suitable for her and the children. Instead, when questioned about where the money she has been making for several months has gone, she indicated that she eats out a lot, sometimes "blows it," and sometimes would "spoil myself."

{¶26} Mother testified that she has access to a vehicle, but at the time of the hearing, it was impounded, and she did not have the funds available to have it returned. Mother has only a learner's permit and is unable to drive without a licensed driver. Father does not have a valid driver license.

{¶27} At some point late in 2017, Mother voluntarily entered the Family Court program. Mother was consistent in her attendance at Family Court status hearings, and actively engaged in many aspects of the program. However, at the time of the hearing, over nine months after she entered the program, Mother remained in Phase I of the program. Testimony reflected that relapses, problems with obtaining an appropriate sponsor, along with periods of inconsistency in other aspects of the program prevented Mother from completing the program.

{¶28} On October 9, 2018, the magistrate issued its findings of fact granting permanent custody of the children to FCCPS and terminating Mother's parental rights. Specifically, the magistrate found that the children could not and should not be placed with Mother at this time, and permanent custody was in the children's best interest.

{¶29} By Judgment Entry filed November 28, 2018, the trial court overruled the Objections, independently reviewed the evidence and issued Findings of Fact and Conclusions of law granting permanent custody of the children to FCCPS and terminating Mother's parental rights. Specifically, the trial court found that the children could not and should not be placed with Mother at this time, and permanent custody was in the children's best interest.

*Assignments of Error*

{¶30} Appellant raises four assignments of error[3],

{¶31} "I. THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILDREN COULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE LENGTH OF TIME.

{¶32} "II. THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE OF THE TRIAL AS REQUESTED BY THE APPELLANT TO ALLOW ADDITIONAL TIME FOR APPELLANT AND CO-APPELLANT TO COMPLY WITH THE CASE PLAN.

{¶33} "III. THE TRIAL COURT ERRED IN HAVING A HEARING ON THE PERMANENT CUSTODY MOTION TEN MONTHS BEFORE THE STATUTORY DEADLINE FOR THIS MATTER TO BE TRIED BY THE COURT.

{¶34} "IV. COUNSEL FOR THE APPELLANT WAS INEFFECTIVE IN HIS REPRESENTATION OF THE APPELLANT AT THE TRIAL IN NOT ENSURING THAT THE CONTINUANCE WAS REQUESTED ON THE RECORD OF THE TRIAL PROCEEDINGS."

---

[3] Although Mother asserts four assignments of error, Mother has not separately briefed each individual assignment of error in compliance with App.R. 16 (A) (7).

I.

{¶35} In her First Assignment of Error, Mother asserts that the trial court's decision is against the sufficiency and weight of the evidence.

**Burden of Proof**

{¶36} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶37} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

***Standard of Review***

**{¶38}** The Ohio Supreme Court has delineated our standard of review as follows,

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. See *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, *Cole v. McClure*, 88 Ohio St. 1, 102 N.E. 264, and *Frate v. Rimenik,* 115 Ohio St. 11, 152 N.E. 14.

*Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

**{¶39}** In *Cross*, the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the

statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

### *Requirements for Permanent Custody Awards*

**{¶40}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶41}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in

another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) The child is abandoned;

(c) The child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶42}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

1**. Parental Placement within a Reasonable Time–R.C. 2151.414(B)(1)(a).**

**{¶43}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed

with the parents. R.C. 2151 .414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)—(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶44} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be

placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

\* \* \*

(16) Any other factor the court considers relevant.

**{¶45}**  R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion.  These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶46} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(E)(1), (4) and /or (13) and /or (16).

{¶47} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the children, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶48} The court found that Mother has not substantially complied with case plan services. Mother has regularly engaged in substance abuse and mental health treatment, but given her long history of substance abuse, and other issues associated with her treatment, concerns remain with respect to this issue. Mother has been inconsistent in demonstrating sobriety, and relapsed at times after the children were removed. Mother regularly attended visits with the children, but struggled to appropriately supervise all of the children at once, and had difficulty managing Father's inappropriate behavior during visits. Mother chose not to engage in parenting education services as offered, even though the services had the potential to alleviate concerns directly associated with the removal of the children. Mother failed to consistently provide stable, appropriate housing for the children during the life of the case. At one point, Mother was residing in housing that would have been appropriate for the children, but she lost that housing because of knowing violations of a behavioral contract. Mother was employed at the time of the hearing. However, concerns remain with respect to her ability to provide for the children. Mother was in danger of losing her employment due to attendance issues. Additionally, she had long periods of unemployment during the life of the case. During the period of employment leading up

to the hearing, Mother was unable to take appropriate steps to secure housing and other necessities for herself and the children. Mother participated in the Family Court program, but failed to progress through the program at an appropriate pace. Mother has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside of the home.

{¶49} The evidence demonstrated the successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of his case plan, she was still not able to be a successful parent to these two children.

{¶50} In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶51} Based upon the foregoing, as well as the entire record in this case, the Court properly found the children could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable to mitigate the concerns that led to the children's removal.

### *The Best Interest of the Child*

{¶52} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the

child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶53} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424(8th Dist.1994). A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶54} The trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073(Nov. 13, 2000), *quoting In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424(8th Dist. 1994).

{¶55} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent

and credible evidence, upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA-5758, 1981 WL 6321(Feb. 10, 1982). "Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be conveyed to us through the written record, *Miller v. Miller*, 37 Ohio St. 3d 71, 523 N.E.2d 846(1988).

{¶56}  In the present case, the trial court's decision indicates it considered the best interest factors.  Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest.  The trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to FCCPS.

{¶57} There was consistent testimony to suggest that Father and Mother love the children.  There was also some evidence to suggest that the children love Father and Mother.  The court found the children cannot find legally secure placement with Mother at this time because concerns remain with respect to Mother's ability to adequately address substance abuse issues and maintain ongoing sobriety; Mother has struggled to demonstrate an ability to safely and appropriately supervise all of the children; Mother failed to take advantage of parenting education services that could have alleviated concerns with her parenting; Mother has failed to consistently provide appropriate housing for the children, and lost appropriate housing due to violations of a behavioral contract; Mother has been inconsistent with employment, is in danger of losing her current position, and even during periods of employment, has failed to use her income to provide necessities for the children; and Mother was unable to

successfully complete the Family Court program. Due to various challenges associated with placement in foster care, the children have been moved on multiple occasions since they were placed in foster care. However, the children have been doing well in their current placements in the time leading up to the hearing.

{¶58} With respect to A.G. the court found that FCCPS has made reasonable efforts to prevent the need for placement, to include but not be limited to referrals to mental health treatment, facilitation of tutoring and extra-curricular activities, foster care placement, regular visitation with Father and Mother, and by providing services to Father and Mother.

{¶59} With respect to I.G. the court found that FCCPS has made reasonable efforts to prevent the need for placement, to include but not be limited to the following: facilitation of pre-school and a referral to the Head Start program, foster placement, regular visitation with Father and Mother, and by providing services to Father and Mother.

{¶60} With respect to E.G. the court found that FCCPS has made reasonable efforts to prevent the need for placement, to include but not be limited to referrals to Children's Hospital for medical and mental health issues, a referral for a speech assessment, a referral to the Early Head Start program, foster placement, regular visitation with Father and Mother, and by providing services to Father and Mother.

{¶61} With respect to N.G., the court found that FCCPS has made reasonable efforts to prevent the need for placement, to include but not be limited to a referral to the Help Me Grow program, foster placement, regular visitation with Father and Mother, and by providing services to Father and Mother.

{¶62} The court further found A.G. has been in her current placement since approximately August 1, 2018. By all accounts, she is doing well in this placement. She has been witnessed hugging and laughing with her current foster family, and has suggested that she wants to stay in her current placement. She is very bonded with her current placement providers. I.G. is currently placed in the same home as A.G. and N.G. and has been there since approximately August 1, 2018. By all accounts, he is doing well in his current placement. He has been witnessed reading books with his foster family, and being very engaged with the family. He is very bonded with his current placement providers. N.G.is currently placed in the same home as A.G. and I.G. and has been there since August 1, 2018. N.G. has been witnessed to be laughing, and very comfortable in the arms of her current placement providers.

{¶63} At this time, E.G. is in a separate placement from his siblings. For some period, E.G. has demonstrated some challenging behaviors, including banging his head into things, and going through long periods of screaming and crying. E.G. was separated from his siblings in an attempt to provide him with the necessary attention to address concerns with him. E.G. has been residing with his current providers since approximately the second week of August 2018. Since that time, E.G.'s behavioral issues have begun to subside, particularly in the month leading up to the hearing. E.G. has been witnessed going to his foster family for comfort, and has been seen happy and playing with others in the home.

{¶64} A.G. and I.G., through their respective attorney's indicated that they supported the Motion for Permanent Custody, and wished to stay with her current providers. E.G. and N.G. are too young to express their wishes. The Guardian ad

Litem indicated at the hearing that she supported the Motion for Permanent Custody and indicated that she believed it was in the best interest of all of the children.

{¶65} The record does not demonstrate that if Mother had been offered different case plan services, or additional time to complete services the result would have been different.

{¶66} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the children could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to FCCPS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶67} Because the evidence in the record supports the trial court's judgment, we overrule Mother's First Assignment of Error.

II.

{¶68} In her second Assignment of Error, Mother argues that the trial court erred in failing to grant a continuance of the Permanent Custody Hearing.

{¶69} Mother argues, "a continuance of the Permanent Custody Motion hearing was requested by counsel for Appellant Mother and by Appellant Father at the hearing on this matter. It is acknowledged that this portion of the hearing was not provided by the Trial Court in its transcript of the matter. As counsel for the Appellant for the purpose of filing an appeal, this counsel was not present for this Motion. However, it

was requested and denied by the Magistrate prior to the hearing on the Motion for Permanent Custody. No explanation is known for the reason that the transcript of this portion of the hearing was not provided to counsel or to the Court." Appellant's Brief at 13.

{¶70} An appellant has the burden of showing the trial court erred based on reference to matters in the record. *State v. Ray*, 181 Ohio App.3d 590, 2009–Ohio–1395, 910 N.E.2d 34, ¶ 29 (5th Dist.). App.R. 9(A)(1) limits appellate records to the "original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." In *State v. Hooks*, the Supreme Court noted:

A reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. *See, State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978).

92 Ohio St.3d at 93–94, 2001–Ohio–150, 748 N.E.2d 528. It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty*, 4th Dist. Pickaway No. 411, 1980 WL 350992 (Feb. 28, 1980), *citing Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227(10th Dist. 1963).

{¶71} In *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384, the Supreme Court of Ohio held the following, "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant

bears the burden of showing error by reference to matters in the record. *See State v. Skaggs* (1978), 53 Ohio St.2d 162, 7 O.O.3d 243, 372 N.E.2d 1355. This principle is recognized in App.R. 9(B), which provides, in part, that ' * * *the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.* * *.' When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." (Footnote omitted.)

{¶72} In the case sub judice, Appellant did not meet her burden, under App.R. 9(B), of supplying this court with a transcript of the proceedings. Because Appellant contends that a transcript of her request for a continuance is unavailable, other options were available to Appellant in order to supply this court with a transcript for purposes of review. Specifically, under App.R. 9(C), Appellant could have submitted a narrative transcript of the proceedings, subject to objections from Appellee and approval from the trial court. Also, under App.R. 9(D), the parties could have submitted an agreed statement of the case in lieu of the record. The record in this matter indicates that Appellant did not attempt to avail herself of either App.R. 9(C) or (D). Nothing in the record before this Court indicates that a continuance was requested by either party.

{¶73} Appellant's Second Assignment of Error is overruled.

III.

{¶74}  In her Third Assignment of Error Mother contends that the trial court erred in hearing the Permanent Custody motion before the statutory deadline set forth in R.C. 2151.414(B).

{¶75}  This Court has observed,

The unfitness of a parent, guardian or custodian can be predicted by past history.

" * * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent, guardian, or custodian] an opportunity to prove her suitability.  To anticipate the future, however, is at most, a difficult basis for a judicial determination.  The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent, guardian, or custodian]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm."  *In re East, supra*, 32 Ohio Misc., at 69, 61 O.O.2d at 41, 288 N.E.2d at 346.  *See, also, In re Custody of Minor* (1979), 377 Mass. 876, 882–883, 389 N.E.2d 68, 73 (court need not wait until presented with maltreated child before it decides the necessity of "care and protection"); *In re Interest of J.A.J.* (Mo.App.1983), 652 S.W.2d 745, 749 (to wait until child suffers harm to terminate parental rights would be "a tragic misapplication of the law"); *New Jersey Div. of Youth & Family Services v. A.W.* (1986), 103 N.J. 591, 616, 512 A.2d 438, 451, at fn. 14 (to wait until

injury to decide issue of health and development of child makes no sense).

It is not necessary that the Varners or Booths be given the opportunity to prove that they can properly care for Crystal.

*In re Bishop*, 36 Ohio App.3d 123, 126, 521 N.E.2d 838(1987).  In our disposition of Appellant's First Assignment of Error, we found that the trial court's decision that FCCPS made reasonable efforts to prevent the removal of the children and the children cannot be placed with Appellant within a reasonable time or should not be placed with the Appellant pursuant to R.C. 2151.414(E) was supported by clear and convincing evidence.

**{¶76}** The record does not demonstrate that if Mother had been offered different case plan services, or additional time to complete services the result would have been different.

**{¶77}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶78}** In her Fourth Assignment of Error, Mother argues that her attorney was ineffective for not insuring that a continuance was requested on the record.

**{¶79}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant.  The second prong is whether the appellant was prejudiced by counsel's ineffectiveness.  *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113

S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶80}  In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251.

{¶81}  The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id., at 694, 104 S.Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  Id., at 693, 104 S.Ct. 2052.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id., at 687, 104 S.Ct. 2052.

> "Surmounting *Strickland'*s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010).  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary

process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

**{¶82}** In our disposition of Appellant's First Assignment of Error, we found that the trial court's decision that FCCPS made reasonable efforts to prevent the removal of the children and the children cannot be placed with Appellant within a reasonable time or should not be placed with the Appellant pursuant to R.C. 2151 .414(E) was supported by clear and convincing evidence. The record does not demonstrate that if Mother had been offered different case plan services, or additional time to complete services the result would have been different.

**{¶83}** Nothing in the record suggests that the trial court would have continued the Permanent Custody Hearing had counsel filed a motion to continue.

{¶84} Therefore, Appellant was not prejudiced by her attorney's failure to file a motion to continue.

{¶85} Appellant's Fourth Assignment of Error is overruled.

{¶86} Because the evidence in the record supports the trial court's judgment, we overrule Mother's four assignments of error, and affirm the decision of the Fairfield County Court of Common Pleas, Juvenile Division.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. CRAIG R. BALDWIN

WSG:clw 0424