[Cite as *S.T. v. J.H.*, 2023-Ohio-1698.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

S.T.

Court of Appeals No.  H-22-005

Appellant

Trial Court No.  CU-2012-0013

v.

J.H.

**DECISION AND JUDGMENT**

Appellee

Decided:  May 19, 2023

* * * * *

Jeremy W. Levy and Brianna L. Stephan, for appellant.

Paul A. Dolce, for appellee.

* * * * *

**DUHART, J.**

**{¶ 1}** This case is before the court on appeal by appellant, S.T. ("father"), from the

March 23, 2022 judgment entry of the Juvenile Division of the Huron County Common

Pleas Court.  For the reasons that follow, we affirm.

## Assignments of Error

ASSIGNMENT OF ERROR NO. 1: The trial court abused its discretion by failing in its duty to supervise the conduct of the attorneys who appeared before it and failing to take reasonable measures to limit the prejudicial impact of attorney misconduct to litigants.

ASSIGNMENT OF ERROR NO. 2: The trial court abused its discretion by denying [father] a continuance when his attorney of record was suspended from practice and failed to appear at trial.

ASSIGNMENT OF ERROR NO. 3: The trial court abused its discretion by failing to rule on all objections and to conduct an independent review of the Magistrate's December 27, 2021 Decision as required by Civ.R.53(D)(4)(d).

## Background

{¶ 2} B.T. was born in 2011 and is the minor child of father and appellee, J.H. ("mother"). Father and mother never married. On March 13, 2012, father filed a complaint for custody of B.T., and in July 2012, father and mother reached an agreement where mother was designated residential parent.

{¶ 3} On October 29, 2019, father filed a motion requesting a change of custody. On May 19, 2020, a magistrate decision was issued, adopting a shared parenting

2.

agreement agreed to by both parties. The plan designated both parents residential and custodial parents, yet it appears that after this agreement, B.T. lived primarily with father.

*Motion for Emergency Temporary Custody*

{¶ 4} On June 29, 2020, mother filed a motion for emergency temporary custody. As grounds, mother stated that the day before, she arrived at father's residence to pick up B.T. and found B.T. unresponsive. EMS was called and transported B.T. to the hospital where he was administered three doses of Narcan. It was mother's understanding that B.T. tested positive for benzodiazepines and marijuana and was experiencing an overdose. Mother also stated that she had been informed by law enforcement that B.T. was found drunk at father's home several weeks prior to this incident and father was criminally charged with furnishing alcohol to a minor.

{¶ 5} The motion for temporary emergency custody was granted. B.T. was placed in the custody of mother and father was granted temporary parenting time with B.T. at Kinship House. The court terminated this parenting time after father stopped attending visits at Kinship House, but later permitted visitation with B.T. to be supervised by father's mother. Thereafter, this parenting time was also terminated by the court.

*Request for Reallocation of Parental Rights*

{¶ 6} Mother filed a motion for reallocation of parental rights and responsibilities on August 10, 2020, requesting that the shared parenting order be terminated and she be designated B.T.'s residential parent and legal custodian. An evidentiary hearing was

3.

scheduled for February 9, 2021, but on that date, pursuant to a request by father's attorney, Kenneth Bailey, the matter was continued.

{¶ 7} On May 6, 2021, an evidentiary hearing was scheduled for August 5, 2021. However, after a telephone status conference upon the court's own motion, and pursuant to a magistrate's order journalized July 30, 2021, the hearing was cancelled and rescheduled for October 7, 2021.  Meanwhile, the magistrate conducted an in camera interview with B.T., and the guardian ad litem ("GAL") filed a report update and recommendations.  She recommended, inter alia, that B.T. be placed in the custody of mother, that B.T. and father continue counseling, and that B.T. have supervised visitation with father.

{¶ 8} On October 6, 2021, father filed a substitution of counsel, wherein attorney Amanda Andrews entered her appearance as counsel of record, to replace Bailey, and requested a continuance of the October 7, 2021 hearing.  The magistrate denied that request, noting that the evidentiary hearing had been rescheduled twice, and that she had not received a motion to withdraw, or a motion to continue, by Bailey.  On October 7, 2021, Bailey filed his motion to withdraw.

{¶ 9} According to a magistrate's order, at the October 7, 2021 hearing, while addressing the motion to withdraw, mother's attorney stated that he did not object to the withdrawal as long as the evidentiary hearing scheduled for that date would not be continued.  The court then "inquired of [father] regarding his position on the motion to

4.

withdraw of Attorney Bailey and [father] indicated that he understood that he and his new counsel would be expected to proceed with the evidentiary hearing ***. [Father] indicated he * * * understood the hazards of proceeding with an evidentiary hearing with his counsel possibly being unprepared." The court then granted Bailey's motion to withdraw.

*Andrews' Representation*

{¶ 10} Also at the October 7, 2021 hearing, the court conducted a pre-hearing conference with Andrews, mother's attorney, and the GAL. This hearing was joined by bar counsel for the Erie/Huron/Ottawa County Local Grievance Committee "to provide information regarding attorney registration in the state of Ohio." The court then took a recess "to allow Attorney Andrews the opportunity to complete her attorney registration online with the Supreme Court of Ohio." After the recess, "Andrews indicated that she had been unsuccessful in completing her attorney registration online." The court then continued the hearing until October 18, 2021.

{¶ 11} Andrews did not appear at the hearing on October 18, 2021. Father explained that "to his knowledge," Andrews was incarcerated in the Ottawa County Jail. Father moved to continue the matter, which was granted. The hearing was continued until November 12, 2021. The magistrate's order stated that no further continuances would be granted, and required Andrews to provide proof that she had been successful in

completing her attorney registration. Andrews also did not appear for the hearing on November 12, 2021, and the hearing went forth with father representing himself.

*November 12, 2021 Evidentiary Hearing*

{¶ 12} The magistrate began by stating that father was there without counsel. The magistrate inquired of mother's attorney, and then father, if they had any pretrial motions. When father replied that he didn't "know what that means," the magistrate asked if there was anything father "would like to ask the court to do [regarding the case] before [they] begin taking evidence." Father did not ask to continue the case. Instead, father explained that he had documentation of "every incident that [B.T.] reported or somebody else reported with pictures, screenshots, the police reports, the involvement sheets, etc." over the year and a half to two years preceding the hearing, but he didn't "know how that works." The magistrate told father he was limited to a witness list and exhibit list filed by Bailey, and gave father time to review the lists. The magistrate also described the process for admitting and referencing exhibits and again asked if father had any other pretrial motions.

{¶ 13} After the brief recess, the court gave each party time to make an opening statement. When it was father's turn, he stated that "I don't really know how this works, exactly what to say word for word, so let's just move forward."

6.

*Mother's Case*

{¶ 14} Mother's first witness was Deputy Craig Ritz with the Erie County Sheriff's Office. Deputy Ritz testified that on May 3, 2020, he and another deputy responded to a call about a noise complaint at father's address. When the deputies walked up to father's trailer, they heard comments from persons inside the trailer stating that B.T. should not be given "any more shots, he's got to go back to his mom's tomorrow." Deputy Ritz then spoke with father, who told him he knew nothing about it. Father's brother, who was also in the trailer, admitted to giving B.T. shots of liquor.

{¶ 15} Tara Ohlemacher, Executive Director at Kinship House, testified regarding father's visit with B.T. on November 1, 2020. Ohlemacher testified that father asked B.T. "if he's a Mama's boy now," and father stated that he wanted B.T. to move back to his house; when B.T. said yes and no, father asked why. Father also asked if B.T. wanted to stay at his mom's, to which B.T. shrugged. Father was asked by a monitor to change the topic. Later, father told B.T., inter alia, that

> we have been doing this for three years now, because you wanted to come home. I'm done coming here. I am texting your mom to pick you up. It's been three years. You let your mother manipulate you * * *, you don't want to be with me no more. Unbelievable. You know the kind of work I put into this and you're going to let your mom get into your head and

brainwash and manipulate you like this. I'm out. I'll text her to come here.

I'm done coming here. I love you. Take care.

Father left the visit and did not return for any further visits at Kinship House. B.T. was upset by this interaction.

{¶ 16} In response to questions by father upon cross-examination, Ohlemacher testified to previous visits where B.T. made statements about wanting to leave mother's house and go back to father's house. She also testified that father had attended all of his visits prior to November 1, 2020.

{¶ 17} Mother testified on her own behalf. Mother has five other children who live with her, and she said that B.T. gets along with these children.

{¶ 18} Mother discussed the circumstances of June 28, 2020. She stated that she arrived at father's home to pick up B.T. She initially did not get a response when she knocked on the door, but then another of father's children opened the door and said B.T. was in there. Mother asked that child to tell B.T. to get ready. As she was waiting outside, the door was left open and she saw B.T. on the floor and the other children were trying to wake him up. She went into the home and B.T. was unresponsive. She yelled for father, who was in another room, to wake up but at first he didn't hear her. Eventually father came into the room and said "He's just sick." Mother called EMS. While at the house, B.T. was given a shot of Narcan. B.T. was taken to the hospital and given more Narcan. Testing showed that B.T. had "benzos" (benzodiazepine) and

8.

marijuana in his system. During the hospital visit, a sheriff told mother that two weeks prior, B.T. was drinking alcohol at father's house. B.T. was in the hospital for two or three days after June 28, 2020.

{¶ 19} Mother further testified that father had not seen B.T. since May of 2021, when father last participated in counseling with B.T., and that father did not call B.T. on the phone.

{¶ 20} When cross-examined by father, mother admitted that the two other children in his home were "sober." During father's cross-examination of mother, her attorney objected to some of father's questions and many of these objections were sustained. The magistrate attempted to explain the problems with father's questioning, and informed him that he would get his own opportunity to present a case. While asking questions about the process, father told the magistrate "I don't know how it works. I didn't go to law school. I have no idea how it goes. I'm trying to catch up as we're going here."

{¶ 21} Mother's last witness was the GAL. The GAL testified regarding her report and recommendation that she had previously submitted to the court. She affirmed that she stands by the recommendations in her report.

*Father's Case*

{¶ 22} Father testified in his own behalf. Often his testimony and evidence were ruled inadmissible. After one occasion in which an objection to a question was sustained,

9.

father stated that "any of my exhibits, you're just going to keep saying that I can't present them. Doesn't mean they're not true. I'm just going to keep getting overruled. So I guess I don't have anything." The magistrate suggested father testify as to his reasons for believing mother should not be residential parent, and he was given latitude by the court with regard to his testimony. He denied that B.T. had been given alcohol at his home, and, with regard to the June 28, 2020 incident, stated that he couldn't figure out how one kid in the household ingested drugs, but the other two were fine. He pointed out that mother was in his house without an adult having let her in, and that he didn't "know what happened in the time frame [he] was sleeping."

{¶ 23} Upon cross-examination, father stated that if he was ordered to participate in counseling, or conduct his visitation at Kinship House, or have his visitation supervised, he would not do it.

*Post-Hearing*

{¶ 24} The magistrate issued her decision on December 27, 2021. After considering the requirements of R.C. 3109.04, and B.T.'s best interest, the magistrate terminated the shared parenting agreement and ordered that mother be the sole residential parent and legal guardian. She further adopted the recommendations of the GAL, including that B.T. and father continue counseling, and that father have supervised visitation.

{¶ 25} On January 7, 2022, father, pro se, filed objections to the magistrate's decision. Relevant to this appeal, father objected on the basis that he "had no legal representation," and that he was "forced" to represent himself. On March 8, 2022, father, pro se, filed supplemental objections to the magistrate's decision.

{¶ 26} On March 22, 2022, the court issued a judgment entry regarding these objections. This judgment entry was amended on March 23, 2022. In the amended judgment entry, the court stated that it had "undertaken an independent review as to the issues raised by [father's] timely-filed objections" and it concluded that "the magistrate 'properly determined the factual issues and appropriately applied the law.'" The court adopted and incorporated the magistrate's findings of fact and conclusions of law and overruled father's objections. Regarding custody, the court terminated the previous allocation of parental rights and responsibilities, named mother B.T.'s sole residential parent and legal custodian, and granted father supervised parenting time with B.T. at Kinship House.

{¶ 27} Father appealed.

### First Assignment of Error

{¶ 28} Father contends that the court had duty to monitor the conduct of attorney Andrews, and take reasonable steps to limit the prejudicial impact of her misconduct on father. In addition to the issues in the record, father points to an Ohio Supreme Court decision issued on November 8, 2021 suspending Andrews from practicing law in Ohio

11.

after she was also suspended from the practice of law in Michigan, and father also points to other legal troubles Andrews was in, unrelated to this case.

{¶ 29} Father maintains that the court was aware that Andrews did not provide proof of her completion of the attorney registration requirements, as the court required, and that Andrews had been suspended from the practice of law. Father argues the court should have advised him of his attorney's imperiled standing, or notified him of its intent to proceed with the hearing on November 12, 2021, with or without his attorney, and that the failure to do so was an abuse of discretion. He also alleges that the trial court's failure to inquire as to whether he "was not prejudiced by Attorney Andrews's misconduct, or even reasonably well prepared to represent himself" was an abuse of discretion.

{¶ 30} "A trial court has the duty and responsibility to supervise the conduct of attorneys who appear before it and its rulings will be upheld unless the court abused its discretion." *155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 426, 650 N.E.2d 869 (1995).

{¶ 31} Upon review, we find that the trial court met its responsibility, as the court did not permit Andrews to violate any ethical responsibility. While father has asserted that the trial court should have made him aware of his attorney's "imperiled standing," the record shows that father was well aware of this fact. Father knew that Andrews had not completed her attorney registration requirements, he knew that the court had required

12.

Andrews to provide proof that she had been successful in completing her attorney registration requirements, and he knew that she had not been at the October 18, 2021 hearing because she was incarcerated. Further, although father argued that the trial court should have notified him of its intent to proceed with the November 12th hearing, the record reveals that the magistrate specifically stated in her October 18, 2021 order that there would be no more continuances.

{¶ 32} We therefore find that the trial court did not violate its duty to supervise Andrews or to limit the impact of Andrews' misconduct on father. Accordingly, father's first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 33} Father argues that the trial court abused its discretion by denying him a continuance of the hearing on November 12, 2021, when his attorney was suspended from the practice of law and did not appear.

{¶ 34} We generally review a denial of a motion for a continuance under an abuse of discretion standard. *In re May.R.*, 6th Dist. Lucas Nos. L-19-1030, L-19-1039, 2019-Ohio-3601, ¶ 25. Here, however, the record does not show that father requested a continuance. In his reply brief, father asserts that such discussions were conducted "off the record prior to the commencement of trial, during which included [father's] request for a continuance" and that "[i]mplicit in the record is the fact that the trial court proceeded with trial * * * over [father's] objections to proceeding *pro se.*"

13.

**{¶ 35}** The burden is on father to establish that the trial court erred, by referring to matters in the record. *Matter of A.G.*, 5th Dist. Fairfield Nos. 18-CA-51, 18-CA-52, 18-CA-53, 18-CA-54, 2019-Ohio-1786, ¶ 70. Factual assertions in a brief are not part of the record. *See id.*, quoting *Dissolution of Doty v. Doty*, 4th Dist. Pickaway No. 411, 1980 WL 350992 (Feb. 28, 1980) ("It is also a longstanding rule 'that the record cannot be enlarged by factual assertions in the brief.'") When a request for a continuance is not included in a transcript, an appellant has options under App.R. 9(C) and (D) to bring evidence of the error before the court. *See id.* at ¶ 72. However, father did not avail himself of these options and there is no record before the court that father requested a continuance.[1]

**{¶ 36}** The parties have also raised arguments regarding whether plain error applies. "[I]n order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process." *In re Estate of Stotz v. Stotz*, 6th Dist. Sandusky No. S-22-014, 2023-Ohio-663, ¶ 20, quoting *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 40. The Ohio Supreme

---

[1] We also note that the record is devoid of any evidence that the trial court was aware of the Ohio Supreme Court's November 8, 2021 interim suspension of Andrews' license to practice law when it proceeded with the November 12, 2021 evidentiary hearing. Father failed to make a record, as it is his burden, to show that the trial court knew Andrews was suspended and nonetheless required him to proceed pro se.

14.

Court has stated that, the plain error rule is not favored, and advised that, in civil cases, "reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121-22, 679 N.E.2d 1099 (1997).

{¶ 37} In the case at bar, we do not find the trial court deviated from any legal rule or made any obvious errors, and additionally do not find this to be an "extremely rare case" where an error was committed that challenges the "legitimacy of the underlying judicial process itself." There is no evidence before the court that father even requested a continuance of the hearing, and so we do not find plain error in this case.

{¶ 38} Father's second assignment of error is therefore not well-taken.

### Third Assignment of Error

{¶ 39} Father asserts that the court did not rule on his objections and conduct an independent review of the magistrate's decision, as required by Civ.R. 53(D)(4)(d). "[O]ur standard of review is whether the trial court abused its discretion in adopting the magistrate's decision. A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion." *B.M. v. H.L.*, 6th Dist. Williams No. WM-14-006, 2015-Ohio-2444, ¶ 7. An abuse of discretion requires "more than an error

15.

of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Id*. at ¶ 8, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 40} Both Civ.R. 53(D)(4)(d) and Juv.R. 40(D)(4)(d) require a court, when objections to a magistrate's decision are filed, to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." It is presumed that the trial court conducted an independent review of the magistrate's decision. *In re K.P.*, 6th Dist. Lucas No. L-18-1196, 2019-Ohio-2045, ¶ 47. The burden is on father to "affirmatively demonstrate the trial court failed to undertake an independent review of the magistrate's decision." *Id.* This requires father to provide us with facts to rebut the general presumption; a mere inference is not sufficient. *Kasper Invest. Properties, L.L.C. v. Put-in-Bay Twp. Bd. of Zoning Appeals*, 2015-Ohio-4628, 49 N.E.3d 788, ¶ 20 (6th Dist.).

{¶ 41} Father argues that he objected to the magistrate's decision on the basis that he "had no legal representation," that he was "forced" to represent himself while Andrews "was incarcerated a day before [his] trial." He points out that the trial court did not specifically make reference to this objection, or indicate that it had "reviewed the propriety of the Magistrate's exercise of authority to deny [father] a continuance to obtain counsel."

{¶ 42} We find that father has not sufficiently met his burden of pointing to facts establishing that the trial court did not conduct an independent review. Although the trial court did not specifically mention father's objection to proceeding pro se, the trial court did state that it had considered the parties' memoranda, undertook an independent review of the issues raised in father's objections, and ultimately, found the magistrate's decision to be proper. Therefore, father's assertion that the trial court failed to conduct an independent review is without merit. Consequently, we find appellant's third assignment of error not well-taken.

### Conclusion

{¶ 43} The judgment of the Juvenile Division of the Huron County Common Pleas Court is affirmed. Pursuant to App.R. 24, father is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

Christine E. Mayle, J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

**MAYLE, J.**

{¶ 44} I concur in the majority decision. I write separately to further address S.T.'s second assignment of error—his claim that the trial court abused its discretion by failing to grant him a continuance when his attorney failed to appear at trial.

{¶ 45} The majority correctly observes that the record contains no indication that father requested a continuance when Andrews failed to appear at the November 12, 2021 hearing. Under certain circumstances, courts have found that a request for continuance was implicit in the party's statements. *See State v. Wilson,* 91 Ohio App.3d 611, 613, 632 N.E.2d 1384 (2d Dist.1993) (finding that defense counsel *implicitly* requested

continuance when he informed the trial court that he had no chance to confer with his client due to the prosecution's untimely disclosure of the witness's identity); *Kocinski v. Kocinski,* 9th Dist. Lorain No. 03CA008388, 2004-Ohio-4445, ¶ 5-12 (treating party's statements—"I do not feel comfortable proceeding with this hearing.  My attorney is not here.  I have no legal representation."—as a request for continuance).  But courts have also declined to treat similar statements as an implicit request for a continuance.  *See Lemon v. Lemon,* 5th Dist. Stark No. 2010 CA 00319, 2011-Ohio-1878, ¶ 69-72 (finding no request for continuance even though wife "made mention that she had been to Legal Aid and that they were assigning her an attorney" and that "she was 'in a grievance' with Legal Aid"); *Webb v. Jones,* 3d Dist. Union No. 14-94-12, 1994 WL 463705, *4 (Aug. 24, 1994) (court did not deem defendant's statement that she would not be prepared for trial following counsel's withdrawal as a request for continuance).

{¶ 46} The circumstances here suggest that father knew how to request a continuance if he wanted one—he did so when Andrews failed to appear on October 18, 2021.  In my view, this weighs against treating father's statements as an implicit request for continuance.  But even if father had requested a continuance, I would find that under the factors for evaluating a request for continuance, set forth in *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), the trial court committed no abuse of discretion by proceeding with the hearing.

19.

{¶ 47} Under *Unger,* the court should consider the following factors in evaluating a motion for continuance: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance giving rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. *Id.* at 67-68.

{¶ 48} Here, the motion had the potential of causing a significant change for the child and disrupting his relationship with father. But this was the fourth scheduled hearing date. It was father's third request for a continuance. Mother's motion was filed in August of 2020, and the hearing at issue took place 15 months later in November of 2021. And although father did not specifically contribute to the circumstance that gave rise to the request for a continuance, (1) he should have reasonably anticipated that Andrews would not be available for trial given that she was unable to update her attorney registration and was recently incarcerated; (2) the court forewarned him of the risk in switching counsel; and (3) the court forewarned him when he requested a continuance of the October 18, 2021 hearing that no further continuances would be granted. Despite all this, there is nothing in the record to show that father took any measures to confirm that counsel would be present at the November 12, 2021 hearing. *See Jagodzinski v. Abdul-Khaliq,* 5th Dist. Licking No. 17-CA-22, 2018-Ohio-1898 (affirming trial court's denial

20.

of request for continuance where "father was aware that his former attorney had not appeared at the April hearing and should have been on notice at that point to secure new counsel"). Under these circumstances, I would find that the *Unger* factors weighed against granting a continuance.

{¶ 49} In sum, I would find that even if father had properly requested a continuance—he did not—the *Unger* factors support the trial court's decision to proceed with the hearing.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.